UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | CASE NO. 4:23-mj-1417 |
| | § | |
| ANDREW VENEGAS | § | |

**UNITED STATES' EMERGENCY MOTION TO STAY AND
REVOKE RELEASE ORDER**

The United States files this emergency motion to stay an order under which the Defendant, Andrew Venegas (Venegas) is set to be released from the U.S. District Court in Houston, Texas in the Southern District of Texas, at 11:00am on July 19, 2023. The Defendant engaged in a twisted scheme of extortion and exploitation of young women and girls; he hacked private social media accounts of at least 200 young girls, including at least two confirmed minors, blackmailed these young girls and women for additional sexually explicit photos and videos, and then blatantly advertised and sold this material as "blackmail" extortion and child exploitation photos. For additional profit, the Defendant also sold contact information of victims to thousands of individuals.

These photos were not shared with the Defendant; the Defendant hacked into Snapchat accounts and downloaded private photos and videos held in the victims' "For My Eyes Only"[1] section of the application. The Defendant then contacted the victims using various phone numbers to disguise his identity and extorted them into creating and providing him with additional sexually explicit material by threatening to distribute the sexually explicit material to the victim's friends and family. Distraught and believing they had no other options, numerous victims complied.

---

[1] This section of the application, as evidenced by the name, are photos and videos that the user may wish to edit or access on the Snapchat application, but does not intend to share with others and keeps private.

The Defendant then profited from this scheme. He blatantly advertised this material as **blackmail** for sale on his encrypted telegram account under the moniker "starkylol." Buyers had the option to purchase three types of bundled content. The options were (1) "all college girls," (2) "all college and blackmail," and (3) "all college, blackmail and under 18." To disguise and conceal his proceeds from the crime, the Defendant had buyers pay him in bitcoin that was sent to a cryptocurrency wallet. Once the cryptocurrency was deposited into the designated wallet, the buyer received a link to download the material. Additionally, the Defendant also sold the victims' images and videos through other websites that are currently the subject of additional investigation.

On July 19, 2023, the magistrate court granted bond,[2] releasing the Defendant to reside at his parents' home, under home detention, with an order that all "smart" electronic devices be removed from the home and that the Defendant have no access to the Internet.   These conditions are insufficient. The release order should be stayed, and ultimately revoked, for the following reasons:

(1)     The weight of the evidence against the Defendant is substantial;

(2)     The Defendant's history of obstruction and failing to comply with court orders, specifically the Defendant's efforts to obstruct agents' access to evidence while the search warrant was being executed at his residence;

(3)     The Defendant's enormous incentive to not appear and tamper with evidence as his charge carries a mandatory minimum imprisonment sentence of 15 years and a sentencing guideline of life imprisonment (although the statutory maximum at this time is 30 years);

(4)     The Defendant failed to overcome the presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of the community;

(5)     Even if the presumption were rebutted, the United States presented sufficient evidence to establish by clear and convincing evidence that the Defendant is a danger to the community; and

---

[2] The Defendant did not contest probable cause.

(6)     The magistrate court's condition that the Defendant not have access to the internet fails to adequately protect the community considering the history and characteristics of the Defendant and the innumerable ways in which a person in today's age could surreptitiously access the internet, despite his parents' hollow promises to remove internet access and all digital devices and smart phones from the residence.

The currently imposed bond conditions are insufficient to adequately protect the public and to ensure the Defendant's appearance at trial.   While residing in his parents' home, for three years, the Defendant hacked into young girls' Snapchat accounts to extort and exploit them. The Defendant then engaged in blackmail to coerce these girls into providing him with additional sexual material. Finally, to profit from his crimes, the Defendant sold not only all this content, but also the unfettered rights to further exploit, manipulate, and harass these victims by delivering the personal information of victims to those buyers willing to pay him, which as discussed below, resulted in further extortion and threats to the victims. Although the exact number has yet to be determined, at this time, investigators estimate that number of victims will exceed two hundred. At least two of these victims have been identified as minors at this time. The Defendant has been categorized by the FBI as a prolific producer of child pornography.

## Background of Investigation

The Federal Bureau of Investigation (FBI) began working on this matter after complaints were made by victims around the country of their sexually explicit images and videos being posted on websites without their permission. Some victims reported that they believed their images and videos were taken from their Snapchat account. Many victims were made aware that their images and videos were stolen after they were contacted by individuals threatening to disseminate this material to their friends and family if they did not provide additional explicit images and videos. Law enforcement was able to locate the websites and observed them to contain photos and videos of over one thousand different females accompanied with the victims' true names. Some of the

images and videos on these websites bore a watermark of "TELEGRAM Starkylol."

Law enforcement subsequently discovered an account on Telegram in the name of Starkylol, which was later identified to be the Defendant's account. While reviewing the account, agents discovered that the Defendant provided "channels" located on his account information page. The channels contained various photographs and video clips of various females clothed, in stages of undress, and engaged in sexually explicit activities. The Defendant proudly made claims in posts to his telegram that the content he had were not from trades or anything found online. *See* Government's Exhibit 2. He claimed that the material was his original collection. *See* Government's Exhibit 1. A pinned message on the Defendant's Starkylol channel boasted that he targeted more "innocent and amateur girls" that can't be found elsewhere." *Id.*

One video posted by the Defendant on September 22, 2022 depicted a minor victim nude and masturbating against a pillow or cushion. Law enforcement contacted that victim and was able to obtain messages in which the Defendant directed the minor to engage in, photograph, and film the exploitive material. Starkylol asked and was informed of the victim's age before he sold it for profit. Agents have verified that the minor victim was in fact a minor at the time the video was created. Multiple pictures were posted by the Defendant identifying another victim as underage. *See* Government's Exhibit 7. It should be noted that law enforcement has not yet identified many of the victims and their ages have thus not yet been verified.

Agents also observed posts of high school cheerleaders, with the Defendant bragging that he had gotten the images from Snapchat. *Id. See also* Government's Exhibit 9. Another post advertised a victim by name and provided samples of her sexually explicit photos and videos for sale and boldly asserted that this material was the result of blackmail. The Defendant advertised videos of more high school aged girls as "prom fuck vids" and again claiming them as being taken

from Snapchat. *See* Government's Exhibit 13. Unabashedly, the Defendant made posts bragging about the fact that he knowingly forces girls to create images against their will and that the images are posted without their consent and flaunted his ability to threaten and extort the victims, because they were "easy to control." *See* Government's Exhibit 7.

But all this humiliation, degradation, and extortion of the victims still left the Defendant unsated. He went a step further. To further destroy and damage the victims, the Defendant also posted multiple screenshots of victims' professional networking LinkedIn pages, essentially goading others to follow suit and blackmail and extort the victims again.

On February 17, 2023, FBI agents acting in an undercover (UC) capacity contacted the Defendant through his Starkylol Telegram application. The Defendant provided prices to the UC for the following material: (1) all college girls for $100, (2) all college and blackmail for $155, and (3) all college, blackmail and under 18 for $215. During the conversation, the UC requested a sample stating that he wanted to avoid getting scammed. The Defendant responded that because he had amassed over 4,000 followers to his channel, he could be trusted to deliver quality content. As of May 2023, the Defendant had amassed nearly 6,000 followers on his telegram channel on which he was selling the sexual exploitation material. *See* Government's Exhibit 1. The UC proceeded to purchase the Defendant's collection of "all college, blackmail and under 18" for $215. The UC sent the funds in bitcoin to a wallet address provided by the Defendant. The Defendant then provided the UC with access to the images by providing a link to a file-sharing platform.

Agents were able to tie the filesharing program to an email address of starkylol@protonmail.com. *See* criminal complaint at ECF 1. Agents discovered that an adult victim had also made a bitcoin payment to the Defendant in an attempt to get him to take down

5

her photos from a website. Agents were able to trace that payment to an account registered with starkylol@protonmail.com and andrewx13590000@gmail.com. The bitcoin was then transferred to a second cryptocurrency company that showed the money was transferred to an account registered with yet another email address of running07201999@icloud.com. Despite the Defendant's numerous layers of concealment and effort to obfuscate his involvement, agents were able to determine that the account belonged to the Defendant after obtaining information from the second cryptocurrency company and affirmatively link the Defendant to the email accounts after obtaining information from Google and Apple. A search warrant for the Defendant's residence was subsequently executed. During the execution of the search warrant, agents sent a message to Starkylol through the telegram application. Those messages appeared on the Defendant's phone.

### Defendant's Obstruction and Refusal to Comply

A federal search warrant, Case No. 4:23-mj-1389 (Sheldon, J.) authorized agents to compel the Defendant to provide his biometric features to access or otherwise unlock any device found pursuant to the search warrant. This information was clearly relayed to the Defendant. However, the Defendant refused to comply with agents' commands and continually moved his face to prevent his phone from unlocking. This resulted in FBI being locked out of the device and without a passcode to otherwise gain entry.

### Points and Authorities

**I.**  **A stay is warranted because there is substantial likelihood that the Court will order detention**

The Court has authority to stay a release order pending its de novo review. *United States v. Brigham*, 569 F.3d 220, 229-30 (5th Cir. 2009) (noting that "the absence of stay authority could render the district court's review power illusory"). The chief factor in determining whether a stay is appropriate is "whether the movant has shown a likelihood of success on the merits of the

appeal." *Libertarian Party v. Dardenne*, 2008 WL 4375782, at *2 (5th Cir. Sept. 26, 2008) (unpublished).[3]

In reviewing a release order, the district court "must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992). The standard is preponderance of the evidence. Detention should be ordered if the Court determines "that it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance." *United States v. Fortna*, 769 F.2d 243 (5th Cir. 1985).

The factors discussed below—the Defendant's history of obstruction and failure to comply with court orders, his tremendous incentive to not appear given the sentencing guideline range and mandatory minimum punishment, his ability to access the internet undetected and hack private social media applications, and the overwhelming weight of the evidence against him—all demonstrate that the Defendant should be detained. Thus, the United States requests that the release order be stayed and revoked.

II.     **No condition or combination of conditions will reasonably assure the Defendants' appearance and the safety of the community**

The United States respectfully requests under 18 U.S.C. § 3145(a)(1) that the Court revoke the release order and detain the Defendant pending trial. As discussed before, the Defendant has not rebutted the presumptions that apply against his release because the crimes alleged involve numerous minor and adult victims, he poses a danger to the community, he poses a risk of non-appearance, and there is no combination of conditions that would reasonably ensure his appearance

---

[3] *Brigham* also explains that other factors relevant to a stay, such as irreparable harm to the moving party and whether a stay will substantially injure the other party, will typically favor the issuance of a stay when review of a release order is being sought. *Id.* at 230 (stating "if the district court disagrees with the magistrate judge's determination regarding release versus detention, but no stay is in place, the person in question may have [ . . . ] disappeared by the time the district court's ruling is rendered and detention is ordered.").

for trial and the safety of the community pending the outcome of the case.    18 U.S.C. § 3142(e)(3)(E), 18 U.S.C. § 3142(g).

The proffer presented at the detention hearing by the Defendant, that the Defendant has no prior criminal history and that his parents could essentially act as gatekeepers to prevent the Defendant from accessing the internet, is insufficient to rebut the statutory presumption in 18 U.S.C. § 3142(e). That section provides, subject to rebuttal by a defendant, that no condition or combination of conditions will reasonably assure the appearance of a person as required or the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense involving a minor victim under sections 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425 of this title. The Fifth Circuit has held that the mere production of evidence does not completely rebut the presumption:

> [The] presumption is not a mere "bursting bubble" that totally disappears from the judge's consideration after the defendant comes forward with evidence...we have held that Congress intended that the presumption remain in the case [as] a factor to be considered by the judicial officer...and in making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society.   The statute thus seems to create an unusual set of weights and measures in which the burden of persuasion is on the government, not the defendant, but the presumption may be weighed in the evidentiary balance. (footnotes omitted).

*United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir. 1989).   Additionally, even if a magistrate court found that the Defendant met his burden, the presumption is not merely discarded but is to be considered along with other factors in 18 U.S.C. § 3142(g).

The Defendant has not rebutted the presumption that he should be detained pending trial. The Defendant has not produced sufficient evidence that (1) he would be reasonably sure to appear for trial and (2) the safety of the community during his release, given his past obstructive conduct

and threats and extortion of victims, who will be critical and key witnesses for his trial.

**A.      The Defendant failed to rebut the presumption that he is a serious flight risk and has already disobeyed the Court's orders**

When the Defendant was presented with legal orders from the court—the search warrant—he engaged in obstruction through non-compliance.  The Defendant was read the warrant by executing agents and instructed to remain still so that agents could open the phone utilizing the Defendant's biometric features. The Defendant moved his face to prevent agents from opening the phone. Agents repeatedly addressed the behavior and reminded him of the contents of the warrant. Agents were eventually locked out of the phone after the Defendant refused to cooperate with the court's warrant.   Agents have identified other websites utilized by the Defendant and this investigation is ongoing.   The Defendant poses a serious risk of obstruction.

Moreover, the Defendant has a tremendous incentive to not appear for trial as he faces a thirty-year sentence of imprisonment. At this time, the United States estimates the guidelines range as follows.

| 2G2.1(a) – | |
|---|---|
| Base Level | 32 |
| The commission of a sexual act or sexual contact | +2 |
| Knowingly engaged in distribution | +2 |
| The use of a computer | +2 |
| Chapter 4 Enhancement- Repeat and dangerous sex offender | +5 |
| Total offense level (before acceptance of responsibility) | 43 (Life) |

Facing a realistic thirty-year term of incarceration (the statutory maximum at this time and as the case is currently charged), taking into consideration that the Defendant has not previously been through the criminal justice system and is only 23 years old, the Defendant has a tremendous

9

incentive to flee.

**B.    The Defendant failed to rebut the presumption that he poses a danger to the safety of the community**

The Defendant is a danger to the community and there is no set of conditions that the court could impose to ensure the safety of the community during his release. In light of the Defendant's savviness related to online and internet activity, his steps to disguise his identity, and the magistrate court's finding related to imposition of a condition limiting the Defendant's access to the internet, the United States argues that the presumption of the Defendant being a danger to society has not been rebutted and that the condition of limiting his access to the internet is not sufficient to protect the community in this case.

1.    Defendant's expertise and history of covertly navigating the internet make him a danger to the community.

This year, the Sixth Circuit reviewed the detention of an internet savvy defendant and the court reasoned that a defendant's "expertise and experience with cyber security and computers is strong evidence that he is *more dangerous* than other defendants charged with the same crime," affirming the district court's detention of the defendant. *United Stated v. Hoilman*, 2023 WL 4074630, *2 (6th Cir. 2023) (emphasis added).[4]   The Sixth Circuit found that even with "home detention, GPS monitoring, canceling of home internet service, removal of internet-capable devices from the home, mental-health evaluation and treatment, and his wife's supervision . . . the significant disparity in [the defendant's] relative technical savvy would make it nearly impossible to prevent [him] from accessing child pornography."

---

[4] The United States does recognize that the defendant in *Hoilman* was more sophisticated than the Defendant in this case. The defendant in *Hoilman* had a background as a government contract systems analyst, which included providing cyber security services for a nuclear facility in addition to a history of concealing his internet activity. However, on a spectrum of internet sophistication the Defendant in this case is savvier than the usual internet user as displayed by his conduct in this case—an ability to hack into private access protected applications, and has a history of concealing his activity on the internet as displayed by his conduct than the average less sophisticated defendant.

Here, the Defendant hacked into the accounts of hundreds of young girls—the Defendant hacked into the "for my eyes only" folders in Snapchat which are supposed to be private only to the user of that internet application. Further, the Defendant used monikers and different phone numbers during the extortion of the girls. The Defendant took advantage of encrypted websites such as Telegram and the anonymity that is often associated with cryptocurrency exchanges.

The nature and history of the Defendant's ability to hack into hundreds of people's private accounts demonstrate his technical savvy related to the internet and there is no way to prevent him from accessing the internet and harming further young women and other members of the community online should he be released from detention.

2. The bond conditions restricting the Defendant's access to the internet are insufficient to ensure the safety of the community

The Defendant did not present evidence sufficient to rebut the presumption that he is a danger to the community and the conditions imposed by the magistrate court are not sufficient to ensure he will not access the internet or some mobile device such that he will further harm the community. The United States has presented sufficient evidence that the Defendant is a danger to the community and no condition or set of conditions will reasonably assure the protection of the community should he be released.

Anyone could simply bring a smartphone to the Defendant, the Defendant could log on to a neighbor's wifi or access a mobile hotspot, access public devices that do not log users while outside of his house, visitors could unintentionally bring over devices with internet access, and more to get around the Court's bond conditions that he not have access to the internet.

The Defendant's threats to victims and extortion also causes the United States extreme concern for the safety of victims and the community at large. The Defendant has demonstrated his savviness with technology and the lengths he is willing to go to regardless of the damage done to

11

society.

Similar to the conditions imposed in *Hoilman*, another district court analyzed issues akin to those in this case related to detention of a defendant and the condition of limiting access to the internet. Again, that court found that it would be impossible to protect the community from the defendant through the condition of limiting access to the internet. In that case the defendant proffered evidence that the defendant had no criminal history, that his wife could be is custodian, and that his access to internet-connected devices could be limited. *United States v. Johnson*, 2020 WL 2513823, *2 (E.D. Ky. May 15, 2020). The magistrate court in *Johnson* found that "[d]ue to the 'myriad of Internet-capable devices available, including those that work with data plans rather than wifi access' . . . it would be 'almost impossible' to effectively police [the defendant's] internet use. *Id*. The district court in *Johnson* affirmed the magistrate court's detention of the defendant and reasoned that the court "could not adequately prohibit [the defendant] from accessing the internet in nearby libraries, restaurants, or coffeeshops; from a cell phone; or myriad [sic] other ways." *Id*. at *4. Further, the court emphasized that the defendant was alleged to have "engaged in conduct without his wife's knowledge" and found that it was "unlikely that she will suddenly become completely effective at monitoring his movements and use of Internet-capable devices." *Id*.

Similarly in this case, the Defendant uses the internet in a sophisticated manner, therefore making him more dangerous than other defendants charged with the same crime. Additionally, as was the case in *Johnson*, the Defendant conducted the crimes in this case completely undetected by his parents (whose home he lived in at the time of his criminal activity). It is highly improbably that the Defendant's parents who had no idea their son engaged in this conduct for three years in their home would suddenly be able to police the Defendant's conduct and access to the Internet.

Furthermore, limiting the Defendant's access to internet and mobile devices is not a reasonable condition to assure that the community will be protected. Courts in this district have stated that restricting access to the internet is a "feat which many courts have noted is nearly impossib[le] given the internet's ubiquitous presence" *United States v. Galvan*, No. 3:20-cr-00019, 2020 WL 4604502, at *6 (S.D. Tex. Aug. 11, 2020) (Brown, J.) (citing *United States v. Voelker*, 489 F. 3d 139, 145 (3d Cir. 2007)). In *Galvan*, this court noted that the defendant did not even require the internet to access children online "as one can access social media with a smartphone and a cell service." *Id*. Likewise, in another case, this court previously concluded that "there is no such thing as an internet-free home anymore unless that home is well out of range of anyone else's Wi-Fi router and any cellular data signal" and that "the Court could fashion no condition to prevent Defendant from viewing child pornography on an illicitly-obtained cell phone or other Wi-Fi network." *6, *8 *United States v. Stone*, No. 4:19-CR-00878, Doc. 25 at *6, *8 (S.D. Tex May 14, 2020) (United States District Judge Alfred H. Bennett) (citing *United States v. Renander*, No. 19-CR-491-WJM, 2020 WL 70429, at *6 (D. Colo. Jan. 7, 2020).

Here, there is no practical way to police the Defendant's access to the internet. He has threatened victims, obtained their personal contact information, released it to others, and evaded his parents' detection of his criminal activity in their home for three years. In this day and age, internet is widely accessible from virtually anywhere—mobile hotspots, neighbors, libraries, doctors' offices, coffeeshops, and there is no bond condition that can reasonable assure his appearance at trial and he will pose a danger to the victims and the community.

## CONCLUSION

The United States has proven that the Defendant is a danger to the community and that there are no conditions that can reasonably assure his appearance at trial. For these reasons, the

United States requests an immediate stay and revocation of the magistrate court's release order and that the Defendant be detained pending trial.

Respectfully submitted,

ALAMDAR S. HAMDANI
United States Attorney

By:  */s/ Colton Turner*
Colton Turner
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 19, 2023, a true and correct copy of the foregoing Motion was served on the attorney for the Defendant.

*/s/ Colton Turner*
Colton Turner
Assistant United States Attorneys

## CERTIFICATE OF CONFERENCE

The United States presumes that the Defendant is opposed to this motion.

*/s/ Colton T. Turner*
Colton T. Turner
Assistant United States Attorney